**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 8, 2019**

# In the Court of Appeals of Georgia

A18A1758. STEWART AUSBAND ENTERPRISES, INC. v. DO-065
HOLDEN et al.

A18A1759. PITTMAN v. STEWART AUSBAND ENTERPRISES, DO-066
INC.

DOYLE, Presiding Judge.

Stewart Ausband Enterprises, Inc., d/b/a Servpro of Norcross ("Ausband") sued

Carl Holden; Holden Properties of Georgia, LLC; Holdpro, LLC (collectively, the

"Holden Defendants"); James Pittman; and Pittman and Holden d/b/a Servpro of

Northeast Greenville Franchise # 10069 ("Servpro Greenville").[1] A default judgment

---

[1] The complaint uses "Servpro Greenville" as a trade name for Holden and
Pittman. "A trade name is merely a name assumed or used by a person recognized as
a legal entity. A judgment against one in an assumed or trade name is a judgment
against him as an individual. An undertaking by an individual in a fictitious or trade
name is the obligation of the individual." *Auto-Owners Ins. Co. v. Tracy*, 344 Ga.
App. 53, 55 (1) (806 SE2d 653) (2017). "The use of a trade name does not create a
separate legal entity." *Galindo v. Lanier Worldwide*, 241 Ga. App. 78, 84 (3) (526

was entered against all defendants, but after further proceedings, the trial court vacated that order, dismissed Pittman, and ruled that Ausband could not recover damages from the remaining defendants. In Case No. A18A1758, Ausband appeals, contending that the trial court erred by (1) ruling that the original damages award was not supported by the record, (2) ruling that damages were unavailable because Ausband failed to demonstrate how to apportion fault among the defendants, and (3) setting aside the default judgment more than three years after it was entered. In Case No. A18A1759, Pittman filed a conditional cross-appeal, contending that the trial court erred by denying his motion to set aside the default judgment for lack of personal jurisdiction over him. For the reasons that follow, we affirm in part and reverse in part in Case No. A18A1758, and we dismiss as moot Pittman's appeal in Case No. A18A1759.

The facts necessary to the appeal are not disputed. The record shows that in July 2012, Ausband filed a verified complaint against the defendants asserting claims for theft/conversion, fraud, breach of the duty of loyalty, unjust enrichment, Georgia

SE2d 141) (1999). Therefore, consistent with the terminology of the complaint, we do not treat Servpro Greenville as a separate corporate entity.

2

RICO (Racketeer Influenced and Corrupt Organizations) Act[2] violations, punitive damages, and attorney fees. In general terms, the complaint alleged that Holden (an employee of Ausband) and Pittman stole or otherwise diverted money from Ausband. Holden, Holden Properties, Holdpro, and Holden d/b/a Servpro Greenville made a special appearance contesting jurisdiction and venue; Pittman failed to file an answer. Ausband moved for entry of a default judgment as to Pittman , and after Holden failed to respond to discovery requests, Ausband moved for sanctions and to strike his answer.

In October 2014, the trial court entered a default judgment against Pittman as to liability. In March 2016, after the Holden Defendants continued to fail to participate in discovery or appear as ordered by the court, the court struck the Holden Defendants' answer and entered a default judgment as to liability.

In May 2016, following a hearing at which no defendant appeared, the trial court entered a judgment in favor of Ausband for $51,418.29 in principal damages with additional treble and punitive damages for a total award of $519,061.63.

---

[2] OCGA § 16-14-1 et seq.

In December 2016, Pittman and the Holden Defendants moved to set aside the default judgments against them under OCGA § 9-11-60 (d) (3).[3] In May 2017, following a hearing, the trial court entered an order finding no jurisdictional defects as to the defendants,[4] but setting aside the May 2016 judgment for a non-amendable defect on the ground that treble damages were entered erroneously without adequate support by the evidence or specificity in the verified complaint as to the principal judgment amount. Therefore, the court set aside the default judgment and set the case for a re-hearing on damages.

In February 2018, after a November 2017 damages hearing, the trial court vacated the May 2016 damages award against Pittman on the ground that the record lacked sufficient factual allegations or evidence to support the award against him; found only $5,960.63 in damages admitted by default against the Holden Defendants; found no evidence to support apportionment under OCGA § 51-12-33; and denied the availability of RICO treble damages as well as punitive damages and attorney fees. Based on these rulings, the trial court concluded that Ausband was not entitled to any

---

[3] Pittman also challenged the trial court's personal jurisdiction over him based on a lack of service. He argued that he had never been served and had no knowledge of the suit.

[4] Pittman challenges this aspect of the order in Case No. A18A1759.

damages. Ausband unsuccesfully moved to set aside the order, and these appeals follow.

*Case No. A18A1758*

1. In this case, Ausband challenges the trial court's order first by arguing that the initial damages award was authorized by the record and any defects in the award were amendable, so it was error to vacate the award.[5] Specifically, Ausband argues that pre-judgment interest and attorney fees were properly trebled, and if they were not, the trial court should have re-calculated the award instead of vacating it. "Because this question is a legal one, we review the record de novo and apply a plain legal error standard of review."[6]

(a) *Defects in damages award*. The May 2016 order awarded damages as follows:

---

[5] As stated in his appellate brief, Ausband's first enumeration appears to challenge the timeliness of the court's order, but his argument more specifically goes to the substance. Despite this discrepancy, Ausband's brief does not impermissibly expand his enumeration, so we endeavor to address the merits of his argument. Cf. *Felix v. State*, 271 Ga. 534, 539 n.6 (523 SE2d 1) (1999) ("[A]n appealing party may not use its brief to expand its enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of the errors.").

[6] *Kitchen Intl., Inc. v. Evans Cabinet Corp.*, 310 Ga. App. 648, 653 (714 SE2d 139) (2011).

| | |
|---|---|
| Principal Damages: | $51,418.29 |
| Interest: | $13,658.08 |
| Attorney Fees: | $21,692.12 |
| Expenses: | $2,918.72 |
| Subtotal: | $89,687.21 |
| Treble Damages: | $269,061.63 |
| Punitive Damages: | $250,000 |
| Total: | $519,061.63 |

After this award was set aside, a hearing on damages was conducted, and Ausband essentially relied on the existing record — the verified complaint and attached checks allegedly showing funds converted by the defendants. Based on this record, the trial court ultimately concluded that the damages Ausband sought had not been proved properly. The court found that the damages were unliquidated and required support by adequate evidence, there was no evidence as to apportionment, and all but one check ("Exhibit F" for $5,960.63) attached to the complaint were part

of certain claims stemming from alleged thefts that Ausband had abandoned because they otherwise were settled by restitution in other proceedings.

Further, the court pointed out that Ausband sought recovery under multiple theories — theft/conversion, fraud, breach of the duty of loyalty, unjust enrichment, and RICO violations — and neither the verified complaint nor the principal damages award broke down the award by claim. Accordingly, because treble damages were only available under RICO,[7] the trial court ruled that a basis for treble damages had not been proved.

Challenging this ruling, Ausband's appellate brief focuses on attorney fees and pre-judgment interest, asserting that they were appropriately included in the trebling calculation. Pretermitting whether that is true,[8] Ausband makes no argument about

---

[7] See OCGA § 16-14-6 (c) ("Any person who is injured by reason of any violation of [OCGA §] 16-14-4 shall have a cause of action for three times the actual damages sustained and, where appropriate, punitive damages. Such person shall also recover attorney's fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred. . . .").

[8] Ausband relies on *Earthlink, Inc. v. Carmack*, Case No. 1:03-CB-3041-TWT 2003 U. S. Dist. Lexis 9963 (decided My 7, 2003), to argue that the Georgia RICO statute authorizes trebling an attorney fee award. But neither that case (which is dicta on this point) nor Ausband's brief addresses the specific language in the Georgia RICO statute, which differs from the Federal RICO statute. Compare OCGA § 16-14-6 (c) with 18 USC § 1964 (c). Although we do not decide the issue in this case, it is not a foregone conclusion that the language of the Georgia RICO statute supports the

the crux of the trial court's reasoning, i.e., that an evidentiary hearing on damages was required, and the record does not otherwise demonstrate the full amount of liquidated damages, nor which portion of the principal damages are attributable to RICO violations and therefore subject to trebling. Ausband had the opportunity to offer more proof at the second hearing on damages, but it essentially relied on the verified complaint and attached exhibits.

> OCGA § 9-11-55 (a) provides that in the event of a default, the plaintiff shall be entitled to a verdict and judgment as if every allegation of the complaint were supported by proper evidence without the intervention of a jury, unless the action is one in tort or involves unliquidated damages, in which event the plaintiff shall be required to introduce evidence and establish the amount of damages before the court without a jury, with the right of the defendant to introduce evidence as

---

trebled award in this case: "Any person who is injured by reason of any violation of [the Georgia RICO statute] shall have a cause of action for three times the actual damages sustained and, where appropriate, punitive damages. Such person shall also recover attorney[] fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred." Cf. *Darden v. Ford Consumer Finance Co.*, 200 F.3d 753, 758 (III) (B) (11th Cir. 2000) ("[T]he plain language of section 16-14-6 (c) makes it clear that the statutory award of attorney[] fees represents a separate and distinct interest awarded to compensate each injured plaintiff individually.").

to damages and the right of either to move for a new trial in respect of such damages.[9]

[A] bare allegation that an amount certain is due and owing[, for example,] under a contract [or invoice] for goods or services is insufficient to render the damages liquidated for purposes of default. For the [trial] court to conclude upon default that damages are liquidated and dispense with an evidentiary hearing on damages, the plaintiff must have alleged facts sufficient to show how the amount of damages claimed was calculated, or the plaintiff must attach to his complaint the relevant contract, invoices, or other documents demonstrating that the plaintiff is due the amount claimed. Put another way, both the amount of the damages and that the amount is fixed and certain must be ascertainable from the complaint and the documents attached to it, and not merely by reference to allegations of bare conclusions. The mere fact that a defendant defaulted upon a complaint [specifying] damages in an amount certain does not make the damages liquidated.[10]

The trial court correctly ruled that there was only one exhibit showing an amount of damages sought by Ausband, i.e., Exhibit F for $5,960.63. The verified

---

[9] (Citations and punctuation omitted.) *BellSouth Advertising & Publishing Corp. v. Kingdom Adventures, LLC*, 277 Ga. App. 495, 495-496 (1) (627 SE2d 125) (2006).

[10] (Citations and punctuation omitted.) *Kitchen Intl., Inc.*, 310 Ga. App. at 653-654 (2).

9

complaint contained certain other allegations not supported by documentation: a false

insurance claim check from State Farm for $37,776.04 ; a diverted cash payment of

$805.98 from Jonella Hawn; a diverted check from Textile Restorations for $3,376.27

; and an improperly received cash payment of $2,000 from Rochelle Lewis .

Nevertheless, "[t]he conclusory allegations of the amount owed were not sufficient

to render the damages liquidated [and therefore recoverable without support in an

evidentiary hearing.[11]] Otherwise[,] every case where a specific amount is stated in

the complaint as due and owing would be turned into a liquidated amount by the

default."[12] This is true even if the complaint is verified and alleges a certain amount

owed.[13] Therefore, the only principal damage award supported by the record was the

---

[11] See *Kingdom Adventures, LLC*, 277 Ga. App. at 496 (1) (the defendant's "default alone was insufficient to convert [the plaintiff]'s damages into a liquidated claim" recoverable on the pleadings alone).

[12] (Punctuation omitted.) *Mitchell v. Gilwil Group, Inc.*, 261 Ga. App. 882, 886 (2) (583 SE2d 911) (2003). See also *Kitchen Intl., Inc.*, 310 Ga. App. at 653-654 (2); *Carter v. Ravenwood Dev. Co.*, 249 Ga. App. 603, 606 (2) (549 SE2d 402) (2001).

[13] See *GMC Group, Inc. v. Harsco Corp.*, 304 Ga. App. 182, 183 (1) (695 SE2d 702) (2010) (reversing trial court ruling that damages were liquidated even if the plaintiff "alleged a specific damages amount in its verified complaint on account" and holding that the failure to prove damages is a nonamendable defect in the judgment).

$5,960.63 amount reflected in the check attached to the complaint as Exhibit F. To the extent that the trial court ruled otherwise, it erred.

(b) *Trebling under RICO.* In light of our conclusion that only a single instance of damages was supported by the record, the trial court did not err by rejecting treble damages under RICO. To demonstrate a RICO violation, a plaintiff must "show an injury by a pattern of racketeering activity. A pattern requires at least two interrelated predicate offenses."[14] Because there was only evidence of a single well-pleaded alleged RICO offense (unlawfully depositing the $5,960.63 check), Ausband failed to demonstrate a RICO violation that would authorize treble damages.[15]

2. Ausband next argues that the trial court erred by ruling that the lack of evidence supporting apportionment was fatal to recovering any damages at all. Under the circumstances resulting from our conclusion in Division 1, we agree.

---

[14] (Citations omitted.) *Brown v. Freedman*, 222 Ga. App. 213, 217 (3) (474 SE2d 73) (1996). See also *Mbigi v. Wells Fargo Home Mtg.*, 336 Ga. App. 316, 322 (2) (785 SE2d 8) (2016) (physical precedent only).

[15] See *Smith v. Chemtura Corp.*, 297 Ga. App. 287, 292 (4) (676 SE2d 756) (2009) (finding no RICO violation because the claim was based on a single unlawful transaction).

It is the defendants' burden to establish a basis for apportionment, and it is the factfinder's role to assign fault accordingly.[16] Here, the award is proved only by the allegations in the complaint, i.e., that Holden acted "in concert with" Holden Properties, LLC, and Holdpro, LLC, to unlawfully deprive Ausband of the $5,960.63 check. These defendants offered no evidence as to apportionment, so there was no basis to apportion the award among them or to any other party. Accordingly, the evidence supported an award jointly against Holden, Holden Properties, and Holdpro; and the trial court erred by holding otherwise.

3. Ausband also argues that the trial court lacked authority to set aside the damages award more than three years after the default judgment. We disagree.

(a) *Timeliness of order setting aside the damages award.* The trial court entered the default judgment as to liability against Pittman in October 2014 and against the Holden Defendants in March 2016. It entered the first judgment awarding damages in May 2016. In May 2017, the trial court set aside the May 2016 damages award as

---

[16] See *Brown v. Tucker*, 337 Ga. App. 704, 716 (4) (788 SE2d 810) (2016) ("The affirmative defense that the jury should apportion fault against someone other than the defendant is no different analytically from the defense of contributory negligence. Once the plaintiff establishes her prima facie case, the defendant seeking to establish that someone else bears responsibility for the damages has the burden of proving that defense."). Cf. *Johnson Street Properties, LLC v. Clure*, 302 Ga. 51, 58 (1) (b) (805 SE2d 60) (2017).

to all defendants based on the lack of a record supporting a damages award and ruled that a hearing on damages must be held. After a hearing on damages in which all parties participated, the trial court entered an order in February 2018 dismissing Pittman and setting aside the damages award against the Holden Defendants.

Under OCGA § 9-11-60 (d) (3), "[a] motion to set aside may be brought to set aside a judgment based upon . . . [a] nonamendable defect which appears upon the face of the record or pleadings. . . ." Such a motion need not be filed in the same term of court, but it must be filed within three years of the entry of the challenged judgment as required by OCGA § 9-11-60 (f).[17]

As noted above, the May 2016 damages award was unauthorized by the record, and as such constituted a nonamendable defect.[18] The trial court set aside that award in 2017 and held a hearing; in 2018, the trial court entered the final order in this case dismissing Pittman and denying damages to Ausband. Because the 2017 and 2018 orders were entered within three years after the May 2016 damages award, they were

---

[17] See *Wright v. Archer*, 210 Ga. App. 607, 608 (2) (436 SE2d 775) (1993) ("It has long been the rule in Georgia that a motion to set aside a judgment based upon lack of jurisdiction or because a non-amendable defect is apparent on the face of the record can be filed outside of the court term in which the judgment was rendered.").

[18] See *GMC Group, Inc.*, 304 Ga. App. at 183 (1).

not time barred by OCGA § 9-11-60 (f). With respect to Pittman, the original default judgment against him was entered in October 2014, and the trial court set aside the damages award as to Pittman in the May 2017 order, which also was within three years of the default judgment against Pittman.

Put more simply, in all of these cases, the challenged judgment was the entry of the May 2016 damages award. The deadline in OCGA § 9-11-60 (f) applies to "*entry of the judgment complained of*."[19] Even if the defendants could not set aside the entry of default against them (and the effect of any well-pleaded allegations), the default against each defendant was entered with the amount of damages to be determined after a future hearing, with the burden on the plaintiff to perfect the record as to the damages they sought. Because the trial court's 2018 order setting aside the judgment as to damages was within three years of the 2016 damages award, the 2018 order was not untimely.[20]

---

[19] (Emphasis supplied.)

[20] See *Willett Lincoln-Mercury, Inc. v. Larson*, 158 Ga. App. 540, 541 (2) (281 SE2d 297) (1981).

(b) *Sufficiency of Pittman allegations*. Ausband also challenges the trial court's conclusion that the complaint lacks well-pleaded facts that, when deemed true or admitted, demonstrate liability on the part of Pittman.

> [I]t is axiomatic that a default does not result in the admission of allegations that are not well-pled or that are the result of forced inferences. The failure to answer or to appear at trial serves as an admission of the facts alleged in the complaint, but not of the conclusions of law contained therein. So while a default operates as an admission of the well-pled factual allegations in a complaint, it does not admit the legal conclusions contained therein. A default simply does not require blind acceptance of a plaintiff's erroneous conclusions of law. Nor does a default preclude a defendant from showing that under the facts as deemed admitted, no claim existed which would allow the plaintiff to recover.[21]

A review of the complaint reveals that it makes specific factual allegations as to the Holden defendants, detailing how Holden diverted checks from Servpro of Norcoss for his personal gain, but it does not contain specific allegations that Pittman himself took part in any of the enumerated thefts. Each cause of action (theft/conversion; fraud and deceit; breach of duty of loyalty; RICO) is predicated on

---

[21] (Punctuation omitted.) *Blue View Corp. v. Bell*, 298 Ga. App. 277, 278-279 (1) (679 SE2d 739) (2009).

15

alleged conduct undertaken by Holden or his corporate entities but not by Pittman. The bare conclusion that Pittman was part of a scheme does not follow from the facts well pleaded. Accordingly, the trial court did not err by dimissing Pittman.

In sum, we affirm the trial court's judgment except to the extent that it denied damages of $5,960.63 as supported by Exhibit F and the relevant allegations against Holden, Holden Properties, and Holdpro. Ausband does not challenge the trial court's ruling that attorney fees and punitive damages were not supported by the record, so those rulings stand affirmed.[22]

*Case No. A18A1759*

In light of our ruling above affirming the trial court's dismissal of Pittman, Pittman's cross-appeal is dismissed as moot.

*Judgment in Case No. A18A1758 affirmed in part and reversed in part. Case No. A18A1759 dismissed. Dillard, C. J., and Mercier, J., concur.*

---

[22] See *Cotton v. Smith*, 310 Ga. App. 428, 429 (1) (714 SE2d 55) (2011) (ruling that because the appellant failed to assert any error as to a specific ruling in the trial court's order, any error as to that ruling was deemed abandoned, and that ruling was affirmed by operation of law). See also Court of Appeals Rule 25 (c) (2).